**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **COURTNEY D. ALSOBROOK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:11-CV-00603-M (BF)** |
| | § | |
| **GMAC MORTGAGE, LLC, and** | § | |
| **EXECUTIVE TRUSTEE** | § | |
| **SERVICES, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case was referred to the United States Magistrate Judge for pretrial management.  Before the Court for consideration is Defendants', GMAC Mortgage, LLC ("GMAC") and Executive Trustee Services, LLC ("ETS") (collectively referred to as "Defendants"), Motion for Summary Judgment (doc. 26), filed on October 12, 2011.  Plaintiff originally filed this wrongful foreclosure action against Defendants in the 439th Judicial District Court of Rockwall County, Texas.  On March 24, 2011, Defendants removed the case to federal court alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  In their Motion for Summary Judgment, Defendants contend that summary judgment should be granted in their favor on all of Plaintiff's claims against Defendants.  Plaintiff failed to file a timely response, and the time to do so has expired.  For the following reasons, the Court recommends that the District Court **GRANT** Defendants' Motion for Summary Judgment and enter judgment in favor of Defendants, GMAC and ETS.

**Jurisdiction**

Subject matter jurisdiction may be raised by the Court *sua sponte*.  *Ruhrgas AG v. Marathon Oil Co. et al.,* 526 U.S. 574, 583-84 (1999).  In fact, at any level of the proceedings, a federal court

must exercise its duty to determine whether it has subject matter jurisdiction over a case. *See id.* at 583 ("[S]ubject matter delineations must be policed by the courts on their own initiative even at the highest level"). A federal court's jurisdiction is limited. A federal court may exercise original jurisdiction when the case "arises under" federal law; or based upon diversity of citizenship of the parties when more than $75,000 is in controversy. *See* 28 U.S.C. §§ 1331, 1332; *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Pursuant to 28 U.S.C. § 1441, a defendant may remove a case from state court to federal district court if the federal court could exercise original jurisdiction of the matter.[1] The removing party bears the burden of establishing federal jurisdiction. *Shearer v. SW. Serv. Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008).

    In the Notice of Removal, Defendants claimed that removal was proper under federal diversity

---

[1] The terms of 28 U.S.C. § 1441 provide:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441.

jurisdiction pursuant to 28 U.S.C. § 1332(a).  (Defs.' Rem. Not. at ¶7.)  Diversity jurisdiction requires

(1) complete diversity of citizenship; and that (2) the amount in controversy exceeds the sum of

$75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  On August 11, 2011, the District Court

entered an Order allowing Defendants to submit a brief addressing how the amount in controversy

exceeds $75,000 in the case.  (Doc. 16.)  In that Order, the District Court explained that Defendants'

argument that the purchase price of the home was conclusive of the amount in controversy was not

substantiated by case law in the Fifth Circuit.  (*See* Doc. 16.)  Defendants complied and submitted a

brief with additional argument as to how the amount in controversy exceeds the mandatory $75,000

jurisdictional amount.  (*See* Doc. 22.)

A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same

state citizenship with any one of the defendants.  *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir.

1992) (citations omitted).  Here, complete diversity of citizenship exists, as Plaintiff is a resident of

Rockwall County, Texas and Defendants are residents of the states of Delaware and Michigan.  (*See*

Defs.' Rem. Not. at ¶¶9-11; Pl.'s Pet. at ¶¶2-4.)  This prong is undisputed.

Defendants claim that the amount in controversy exceeds $75,000 because, among other things,

the fair market value of the property at issue is $132,460.[2]  (Defs.' Br. of AIC at 2.)  In Plaintiff's

Petition, she seeks to "[p]ermanently enjoin Defendants from foreclosing upon her homestead."  (Pl.'s

Pet. at 9.)  Defendants contend that since Plaintiff is seeking a permanent injunction to prevent

---

[2]  The Court notes that Defendants do not claim that it is "facially apparent" from
Plaintiff's Petition that the jurisdictional threshold has been satisfied.  The Court further notes
that in support of its argument, Defendants attached an appraisal of the subject property obtained
from the Rockwall Central Appraisal District's website.  (*See* App. to Defs.' Br. of AIC, Ex. 1.)
This Court finds the appraisal may be utilized as "summary judgment-type evidence", as it falls
within the public records exception to hearsay.  *See Govea v. JPMorgan Chase Bank, N.A.*, No.
H-10-3482, 2010 WL 5140064, at *4 (S.D. Tex. Dec. 10, 2010).

foreclosure of her home, the fair market value of the home is determinative of the amount in controversy because that is the value of what Plaintiff stands to lose if Defendants proceed with foreclosure.  (Defs.' Br. of AIC at 2; *see Nationstar Mortgage L.L.C. v. Knox,* 351 Fed.Appx. 844, 848 (5th Cir. 2009) (citations omitted) (holding that the amount in controversy in an action for injunctive relief is measured by the value of the object of the litigation.)

There appears to be a split of authority among the District Courts in the Fifth Circuit as to whether the fair market value of the property or the plaintiff's equity in the property is dispositive of the amount in controversy.  *Compare Griffin v. HSBC Bank USA,* No. 3:10-CV-728-L, 2010 WL 4781297, at *3 (N.D. Tex. Nov. 24, 2010) (finding the amount in controversy satisfied by the fair market value of the home); *Govea,* 2010 WL 5140064 at *4 (holding that the fair market value of the property is dispositive of the amount in controversy); *and Martinez v. BAC Home Loans Servicing, L.P.,* No. SA-09-CA-951-FB, 2010 WL 6511713, at *12 (W.D. Tex. Sept. 24, 2010) (holding that the fair market value of the property is the proper measure of the amount in controversy); *with Elsner v. Bank of N.Y. Mellon,* No. 4:11-CV-370-A, 2011 WL 2650567, at *4 (N.D. Tex. July 6, 2011) (holding that the amount in controversy is determined by the amount of the plaintiff's equity in the home); *and Ballew v. America's Servicing Co.,* No. 4:11-CV-030-A, 2011 WL 880135, at *3-5 (N.D. Tex. March 14, 2011) (holding the amount in controversy not satisfied by the fair market value of the property, but instead by the value of postponing the foreclosure).

Since the Fifth Circuit has yet to decide this precise issue, this Court finds the majority view reasoning that the fair market value of the property is determinative of the amount in controversy persuasive.  Furthermore, the relief sought by Plaintiff in this case is similar to the relief sought by the plaintiff in *Griffin.*  Thus, even if the court were to utilize the amount of plaintiff's equity in the home

4

($25,000), Plaintiff is also seeking double or treble damages for the alleged violation of the Texas Property Code, actual damages, and attorney's fees, which may be included in the amount in controversy. *See White v. FCI U.S.A., Inc.,* 319 F.3d 672, 675-77 (5th Cir. 2003). Utilizing a common-sense approach, the sum of these amounts is more likely than not to exceed the $75,000 jurisdictional threshold. *See Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000) (holding a common-sense approach should be utilized in determining whether the jurisdictional threshold for the amount in controversy has been met); *see also Griffin,* 2010 WL 4781297 at *3 (finding the amount in controversy satisfied even where the Court only utilizes the plaintiff's equity in the home, slightly under $30,000, together with actual and treble damages, and recovery of attorney's fees.)

In sum, this Court finds that the $75,000 jurisdictional requisite for the amount in controversy has been satisfied. Thus, the Court has subject matter jurisdiction over the case pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a). The Court will now turn to the merits of Defendants' Motion for Summary Judgment.

## **Standard of Review**

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the

non-movant's case.  Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case.  *Little*, 37 F.3d at 1075.  Once the movant meets his burden, the non-movant must show that summary judgment is not appropriate.  *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.  *See* FED. R. CIV. P. 56(e).  "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant.  *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue.  *Matsushita,* 475 U.S. at 586. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports her claim.  *Ragas,* 136 F.3d at 458.  Rule 56(e) outlines what a response must include in order to properly oppose a motion for summary judgment. FED.R.CIV.P. 56(e).  If the party opposing summary judgment does not respond, the court may grant summary judgment if the movant has made a prima facie showing that it is entitled to relief.  *Eversly v. Mbank,* 843 F.2d 172, 174 (5th Cir.1988); FED.R.CIV.P. 56(e).  Nevertheless, a court may not grant a

default summary judgment simply because the non-movant has failed to respond.  *Eversly,* 843 F.2d at 174; *Tutton v. Garland Indep. School Dist.,* 733 F.Supp. 1113, 1117 (N.D.Tex. 1990).  The court may, however, accept the movant's evidence as undisputed. *United States v. $252, 671.48 in U.S. Currency,* 734 F.Supp. 254, 256 (N.D.Tex.1990); *Tutton,* 733 F.Supp. at 1117.  The court must then determine if the movant has made a prima facie showing of its entitlement to summary judgment based upon the movant's undisputed evidence.  *Vega v. Parsley,* 700 F.Supp 879, 881 (W.D. Tex.1988).

Here, as the non-moving party for summary judgment who also carries the burden of proof at trial, Plaintiff has the obligation of outlining specific facts in the record that would create genuine issues of fact causing this Court to deny summary judgment.  *See Bookman v. Shubzda,* 945 F.Supp. 999, 1003 (N.D. Tex. 1996).  A duty to search the entire record to find evidence supporting the nonmovant's opposition is not imposed upon the district court.  *Jones v. Sheehan, Young, & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996).  Because Plaintiff failed to respond to Defendants' Motion for Summary Judgment, Plaintiff did not meet her burden of designating specific facts which relate to her claims and would create genuine issues for trial.  *See Bookman,* 945 F.Supp at 1004.  In this case, the Court will accept Defendants' summary judgment evidence as undisputed.  *See Tutton,* 733 F.Supp. at 1117.

### Undisputed Material Facts[3]

---

[3] These facts are taken from the "Statement of the Facts" portion of the Defendants' Motion for Summary Judgment, filed in accordance with Local Rule 56.3 of the Northern District of Texas.  Plaintiff has not filed a response to Defendants' motion.  Consequently, the

On or about February 2, 2004, Plaintiff executed an Adjustable Rate Note in favor of Homecomings Financial Network, in the amount of $161,500.00, for the purchase of certain real property located at 221 Alta Vista, Rockwall, TX 75087.  (*See* Defs.' Mot. for Summ. J. App. 7-10.) Contemporaneously therewith, Plaintiff executed a Deed of Trust.  The Deed of Trust gives the lender or its assignee the right to foreclose on the property in the event that the borrower defaults.  The Deed of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS") as the "nominee for Lender and Lender's successors and assigns."  (*See id.* at 16-31.)  The Deed of Trust named Don Ledbetter as the Trustee.  (*See id.* at 17.)  Defendant GMAC is the servicer on the mortgage account and has been the servicer since the loan's inception.  (*See id.* at 2, ¶ 8.)  Defendant ETS is wholly owned by GMAC and acts on its behalf as a mortgage servicer.  (Pl.'s Pet. at ¶ 10.)

On September 24, 2009, MERS executed an Appointment of Substitute Trustee, removing Ledbetter as the Trustee and designating Randy Daniel, Noel McNally, Cassandra Inouye or Erika Puentes, as the Substitute Trustee.  (*See* Defs.' Mot. for Summ. J. App. at 38-39.)  On or about October 27, 2009, MERS executed an Assignment of Deed of Trust assigning the Deed of Trust to Bank of New York Trust Company, N.A., as successor to JP Morgan Chase Bank, N.A., as Trustee for RAMP 2004RS3 c/o Residential Funding Corp. Attorney in Fact ("RFC").  (*See id.* at 42-43.)

Plaintiff became delinquent on her account beginning in 2005.  From 2005 through 2010, Plaintiff was offered several different modification plans or repayment agreements, but failed to fulfill her obligations under each plan.  For example, in late 2008, Homecomings Financial Network entered into a permanent modification with Plaintiff that reduced her interest rate and waived all outstanding

---

"Statement of the Facts" contained in Defendants' pleading is admitted for purposes of Defendants' motion for summary judgment.  *See Gaspard v. Amerada Hess Corp.,* 13 F.3d 165, 166 n. 1 (5th Cir. 1994); *Eversley,* 843 F.2d at 174.

late charges on her account.  (*See id.* at 45-47.)  Similarly, in October 2009, Plaintiff executed a

Foreclosure Repayment Agreement with GMAC, in which GMAC agreed to suspend foreclosure

proceedings provided Plaintiff honored the terms of the agreement.  GMAC agreed to this special

forbearance to allow Plaintiff time to submit financial information to GMAC so that it could review it

for available options.  (*See id.* at 49-51.)  In June 2010, GMAC gave Plaintiff yet another trial

modification and Plaintiff executed another Repayment Agreement, pursuant to which Plaintiff agreed

to make three trial payments of $1,467.57 to GMAC.  (*See id.* at 54-56.)  Plaintiff made the first trial

payment, which made her account current through February 2010, and did not make the remaining

payments under the trial plan.  (*See id.* at 3, ¶ 13.)

On or about October 22, 2010, Plaintiff made a $9,000.00 telephone payment to GMAC (with a

$7.50 telephone payment fee), that would have brought Plaintiff current through August 2010.  (*See id.*

at 3, ¶ 14.)  Because Plaintiff's account was still several months in default, on November 2, 2010,

GMAC sent Plaintiff a notice of default and an intent to accelerate.  (*See id.* at 58-60.)  On November

4, 2010, Plaintiff made a payment to GMAC of $6,446.57.  That payment was applied to the

September 2010 to December 2010 months.  (*See id.* at 3, ¶ 16.)  However, on November 5, 2010, the

$9,000.00 payment that Plaintiff made in October was returned for insufficient funds.  Thus, GMAC

reversed the payments that it had previously credited to Plaintiff, leaving the account delinquent as of

July 2010.  (*See id.* at 3, ¶ 17.)  The statement, attached to Plaintiff's Complaint as Exhibit E, and

attached to Defendants' Appendix as Exhibit K, does not reflect reversal of those payments because as

of the date the statement was issued, the $9,000.00 payment had not yet been returned for insufficient

funds.  (*See id.* at 3, ¶ 18.)  On December 28, 2010, Pite Duncan, LLC, on behalf of GMAC, sent a

Notice of Acceleration to Plaintiff.  (*See id.* at 62-63.)  On January 13, 2011, Randy Daniel, as

Substitute Trustee, executed a Notice of Substitute Trustee's Sale, setting the foreclosure sale for the subject property for March 1, 2011.  Plaintiff was provided a copy of the Notice.  (*See id.* at 65-66.)

<u>Analysis</u>

Although Plaintiff's Petition is somewhat incoherent, the Court identifies five causes of action that Plaintiff attempts to assert: (1) wrongful foreclosure; (2) breach of contract; (3) violation of the Texas Property Code; (4) violation of the Federal Debt Collection Practices Act; and (5) violation of the Real Estate Settlement Procedures Act.  The Court will examine the merits of each claim.

**Wrongful Foreclosure**

To succeed on a claim for wrongful foreclosure under Texas law, a plaintiff must show: (1) a defect in the foreclosure sale; (2) a grossly inadequate selling price; and (3) a causal connection between the defect in the sale and the grossly inadequate selling price.  *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.-Houston [14th Dist.] 1989, writ denied).  "A claim for 'wrongful foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect.  Texas courts have yet to recognize a claim for 'attempted wrongful foreclosure'"  *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 729 (N.D. Tex. 2011) (citing *Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex.Civ.App. 1977, no writ); *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex.App. 1998, no pet.).  Because an inadequate selling price is a necessary element of a wrongful foreclosure action, "a foreclosure sale is a precondition to recovery."  *Biggers,* 767 F.Supp.2d. at 730.

Here, there is no allegation that a foreclosure sale actually occurred.  Instead, Plaintiff alleges a lack of standing on behalf of Defendants to foreclose on her property and defects in the notices of sale and acceleration.  (Pl.'s Pet. at ¶¶ 9-17.)  Plaintiff is, in fact, still residing at the property which is the

subject of this lawsuit.  Because Plaintiff only alleges defects in the foreclosure process, and not an actual foreclosure sale, Plaintiff cannot prove a necessary element of wrongful foreclosure.  *See Biggers,* 767 F.Supp.2d at 729-30.  Moreover, the Court finds that Defendants do have standing to foreclose on Plaintiff's property, as MERS assigned the Deed of Trust to RFC, and Defendants were acting on behalf of RFC in initiating foreclosure.  There is no genuine issue of material fact that exists for trial, and thus, Plaintiff's claim of wrongful foreclosure fails as a matter of law.

**Breach of Contract**

Under Texas law, a plaintiff must demonstrate the following elements to succeed on a breach of contract claim: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach by the defendant; and (4) damages.  *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 140 (Tex.App.-Corpus Christi 2008, no pet.)

Plaintiff first argues that Defendants breached paragraph 22 of the Deed of Trust by not stating in the Notice of Acceleration that the Borrower has "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."  (Pl.'s Pet. at ¶ 17.)  Paragraph 22 of the Deed of Trust addresses the content of the notice of default provided prior to acceleration.  The first line of paragraph 22 reads "[l]ender shall give notice to the Borrower prior to acceleration following borrower's breach of any covenant or agreement to this Security Instrument . . ."  (Defs.' Mot. for Summ. J. App. 28.)  The rest of the paragraph then states what must be provided in that notice.  Paragraph 22 does not discuss what should be in the Notice of Acceleration, therefore, Plaintiff's argument that Defendants breached the Deed of Trust lacks merit.

Plaintiff also contends that Defendants failed to provide accurate loan history information and failed to properly credit her account.  (Pl.'s Pet. at ¶¶ 21-25.)  Nonetheless, Plaintiff neglects to

mention that her $9,000.00 payment made in October 2011 to GMAC was returned for insufficient funds.  Instead, Plaintiff's argument is premised upon GMAC's receipt and deposit of her $9,000.00 payment.  Plaintiff has failed to present any material facts to this Court to substantiate her claim that Defendants breached their contract.

Finally, Plaintiff makes a claim that Defendants failed to refinance Plaintiff's loan under the federal Home Affordable Modification Program ("HAMP").  (Pl.'s Pet. at ¶¶ 19-20.)  Plaintiff asserts that she provided all the necessary information to GMAC, thus "[i]t is understandable that [she] cannot fathom why she has not received a HAMP refinance on her home's mortgage."  (*Id.*)  However, Plaintiff fails to point to any contractual clause which guaranteed refinancing under HAMP, nor does she cite to any case law which supports a right to refinancing under HAMP.  Instead, the Southern and Eastern Districts of Texas have both held that there is no private right of action for borrowers for failure to receive a HAMP modification.  *See Cade v. BAC HomeLoans Serv., LP,* No. H–10–4224, 2011 WL 2470733, at *2 (S.D.Tex. June 20, 2011); *Mortberg v. Litton Loan Servicing, L.P.*, No. 4:10–CV–668, 2011 WL 4431946, at *5 (E.D.Tex. August 30, 2011).  Plaintiff has failed to demonstrate that Defendants breached their contract or that Plaintiff has a right of action for failure to receive a HAMP modification.

In sum, the Court finds that Plaintiff cannot prove a necessary element of a breach of contract claim, that a breach occurred by Defendants.  Because there is no genuine issue of material fact that exists for trial, Plaintiff's breach of contract claim cannot stand.

**Texas Property Code**

In her Petition, Plaintiff alleges a cause of action under § 51.0075 of the Texas Property Code.  Specifically, Plaintiff contends that the Notices of Sale were deficient in that they did not provide the

name and addresses of the trustee or substitute trustees.  (Pl.'s Pet. at ¶ 18.)  The pertinent part of §

51.0075 states: "(e) The name and a street address for a trustee or substitute trustees shall be disclosed

on the notice required by Section 51.002(b)."  TEX. PROP. CODE §51.0075(e).

Contrary to Plaintiff's argument, the Notice of Sale listed the five substitute trustees, Randy

Daniel, Cindy Daniel, Noel McNally, Cassandra Inouye or Erika Puentes, and provided their address

as "c/o Executive Trustee Services, LLC, 2555 North Ontario Street, Suite 400, Burbank, California

91504-3120."  (*See* Defs.' Mot. for Summ. J. App. 65-67.)

The Court finds that there is no genuine issue of material fact that exists for trial to show a

violation of § 51.0075 of the Texas Property Code has occurred.  Thus, Plaintiff's claim fails as a

matter of law.

**Federal Debt Collection Practices Act**

Plaintiff appears to assert a claim under the Federal Debt Collection Practices Act ("FDCPA"),

15 U.S.C.A. § 1692 *et seq.*  Under the FDCPA, a "debt collector" is a party who collects a debt on

behalf of another entity and does not include "the consumer's creditor, a mortgage servicing company,

or an assignee of a debt."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985).  As the

servicers on the mortgage account of Plaintiff's loan, Defendants are mortgage servicing companies,

and therefore, not a "debt collector" under the FDCPA.  The FDCPA is inapplicable here.

**Real Estate Settlement Procedures Act**

Finally, Plaintiff asserts a cause of action under the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C.A. § 2601 *et seq.*  The purpose behind the RESPA legislation was to protect

consumers from being charged unnecessarily high real estate closing settlement fees associated with

abusive practices such as kick backs or fee-splitting. *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 358 (5th Cir.2003). The statute of limitations for private plaintiffs to sue under RESPA is one-year. 12 U.S.C.A. § 2614. The limitations period is triggered by the real estate closing transaction where the alleged abusive tactics occurred. *Snow,* 332 F.3d at 358.

Here, the real estate transaction at issue was completed on or about February 2, 2004 when Plaintiff purchased her home. Plaintiff did not bring this suit until February 28, 2011, approximately seven years after the closing. Thus, Plaintiff's claim under RESPA is time-barred and fails as a matter of law.

## **Recommendation**

Defendants have met their burden of demonstrating their entitlement to judgment as a matter of law because based on the undisputed facts, there is no genuine issue of material fact that exists for trial. Accordingly, this Court recommends that the District Court **GRANT** Defendants' Motion for Summary Judgment (doc. 26) and **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants, GMAC and ETS.

Furthermore, the Court recommends **DENYING** as **MOOT** Defendants' Motion to Dissolve Temporary Restraining Order (doc. 33), filed on November 17, 2011, as the Temporary Restraining Order expired by its own terms on March 13, 2011, and Defendants did not remove the case until March 24, 2011. (*See* Doc. 2, Exhibit A - Index of State Court File at 61-62.) Additionally, the Court recommends **DENYING** as **MOOT** Defendants' Motion To Grant Defendants' Pending Motions (doc. 42), filed on January 27, 2012, because upon the District Court's acceptance of the Findings, Conclusions, and Recommendation, Defendants will no longer have any pending motions. Finally, the Court recommends that the District Court **DENY** Plaintiff's Motion to Remand and Brief in Support

14

(doc. 36), filed on December 1, 2011, as this Court addressed subject matter jurisdiction and found that the District Court has jurisdiction to hear the case pursuant to 28 U.S.C. § 1332(a).

SO RECOMMENDED, April 13, 2012.

_____

**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after service.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).